FILED AUG 13 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.

CHARLES F. MURRAY

ENTERED
AUG 14 2007
CLERK OF COURT

CRIMINAL NO. 04-666

MEMORANDUM AND ORDER

Kauffman, J.                                                                                       August 13, 2007

Now before the Court is the Petition of Charles F. Murray ("Petitioner" or "Murray") to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. For the reasons that follow, the Petition will be denied.

I.     **Procedural Background**

Petitioner was charged by Information with one count of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B).[1] On November 5, 2004, he entered a guilty plea. As part of the plea agreement, Petitioner agreed that he would neither appeal nor collaterally attack his conviction and sentence. Before approving the agreement, the Court engaged in an extensive colloquy with Petitioner to ensure that his waiver was knowing and voluntary. On February 24, 2005, Petitioner was sentenced to forty months imprisonment.[2] The Court ordered that he serve twelve months of that sentence consecutively to the sentence he was serving in New Jersey, with the remainder to run concurrently. On March 9, 2005, Petitioner

---

[1] Petitioner was also prosecuted in New Jersey. On July 25, 2003, he was charged with interstate travel to engage in illicit sexual relations with a minor, in violation of 18 U.S.C. § 2423(b). Petitioner pled guilty to those charges pursuant to a plea agreement. On August 27, 2004, he was sentenced to serve 87 months in custody.

[2] That sentence was within the advisory guideline range of 37-46 months.

filed a pro se notice of appeal. The Government filed a motion to enforce the appellate waiver and to dismiss the appeal. On May 27, 2005, the Third Circuit granted the Government's motion and dismissed the appeal.

On June 19, 2006, Petitioner moved to Vacate, Set Aside, and/or Correct Sentence pursuant to 28 U.S.C. § 2255, alleging ineffective assistance of counsel. The crux of his argument is that his counsel was ineffective by failing to advise him of the possibility that the evidence against him was illegally seized by the United States Postal Inspection Service ("USPIS"), which, he argues, had exceeded the scope of its authority by seizing incriminating evidence that was not "postal" in nature. He further contends that had his attorney properly investigated the scope of the Postal Inspector's authority, the evidence seized would have been suppressed. On April 11, 2007, after appointing counsel for Petitioner, the Court held an evidentiary hearing and the parties were permitted to submit supplemental briefs.

## II. Factual Background

The following facts are uncontested. On July 25, 2003, postal inspectors executed a federal search warrant on Petitioner's home in Ambler, Pennsylvania. During the search, the inspectors seized Petitioner's computer and several disks. In searching through the seized materials, the inspectors found approximately 184 images of child pornography. Two months prior to the search, Petitioner had twice traveled to New Jersey and engaged in sexual relations with a fourteen-year-old boy. The victim's father learned of the contact and alerted the police. The police then contacted the USPIS. Postal Inspector Joseph Fringo, who has submitted an affidavit to the Court, began an investigation which led to the identification of Petitioner as the assailant and resulted in the search and arrest.

Inspector Fringo, posing as the same fourteen-year-old boy with whom Petitioner had been in contact, contacted Petitioner via the internet. He conversed with Petitioner via email and Instant Messenger. After securing the victim's consent, Inspector Fringo recorded a telephone conversation between Petitioner and the victim, during which the two arranged a meeting. Law enforcement set up surveillance at the meeting place, but Petitioner never arrived. Based on the information he had gathered, Inspector Fringo concluded that he had probable cause to obtain a warrant to search Petitioner's home. See Affidavit of Joseph Fringo, attached to Application and Affidavit for Search Warrant, July 24, 2003; see also United States' Opposition to Defendant's Section 2255 Motion, at 3-4.

## III. Discussion

The Court must first determine whether the Petition is precluded by Petitioner's agreement with the Government.

### A. Waiver of Right to Collateral Challenge

In U.S. v. Khattak, 273 F.3d 557, 563 (3d Cir. 2001), the Third Circuit held that "waivers of appeals are generally permissible if entered into knowingly and voluntarily, unless there is a miscarriage of justice." Id. Although the Third Circuit has not directly addressed the applicability of this holding to waivers of the right to collateral attack, a number of courts in this district as well as in other jurisdictions have held that the principle applies equally to waivers of the right to collateral attack. See United States v. Black, 2006 WL 759691, at *2 (E.D. Pa. March 23, 2006); United States v. Fagan, 2004 WL 2577553, at *3 (E.D. Pa. Oct. 4, 2004); see also United States v. White, 307 F.3d 336, 337 (5th Cir. 2002).

The agreement Petitioner entered into contained an explicit waiver clause, which stated

3

in pertinent part:

> In exchange for the undertaking made by the government in entering this plea agreement, the defendant voluntarily and expressly waives all right to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law.

See Guilty Plea Agreement, at ¶9. During the November 5, 2004 change of plea hearing, the Court asked a series of questions to ensure that Petitioner reviewed and understood the content of the agreement and that he entered into it voluntarily:

> THE COURT: Mr. Murray, before I accept your plea of guilty, I'm going to ask you some questions in order to satisfy myself that your plea is knowingly and voluntarily made.
>
> [...] Have you had ample opportunity to discuss your case with Mr. Petrone?
>
> THE DEFENDANT: I have, your Honor.
>
> THE COURT: Are you fully satisfied with the counsel, representation and advice given to you by Mr. Petrone?
>
> THE DEFENDANT: I am, your Honor.
>
> [...]
>
> THE COURT [to Mr. Petrone]: Have you had a full opportunity to investigate any possible defenses Mr. Murray may have and to talk with and advise him of these possible defenses?
>
> MR. PETRONE: We have, your Honor.
>
> [...]
>
> THE COURT: Mr. Murray, did you hear and understand the questions I just asked your attorney?
>
> THE DEFENDANT: Yes, I did, your Honor.
>
> THE COURT: Do you have any comment regarding any of my questions or any of his responses?
>
> THE DEFENDANT: No, your Honor.

4

[...]

THE COURT: Are you pleading guilty of your own free will because you are guilty?

THE DEFENDANT: I am, your Honor.

[...]

THE COURT: Do you understand that by pleading guilty you are giving up the right to challenge the manner in which the Government obtained evidence against you?

THE DEFENDANT: I do, your Honor.

[...]

THE COURT: The plea agreement as stated by Mr. Glenn greatly limits your right to appeal and prevents you from using later proceedings like a collateral attack and habeas corpus to challenge your conviction, sentence, or any other matter... do you understand that?

THE DEFENDANT: I understand, your Honor.

[...]

THE COURT: Mr. Murray, you will have an opportunity to address the Court at the time of sentencing, but I want to give you that opportunity now as well ...

THE DEFENDANT: There's not much I have to say, your Honor, except the fact that I've never denied that – you know – that I did possess these – these items and I'm ready to face my punishment.

THE COURT: Thank you, sir.

November 5, 2004 Plea Hearing Transcript, at 7-8, 16, 21, 23, 26-27.

    The basis of Petitioner's claim - namely, the manner in which the Government obtained incriminating evidence against him – was explicitly addressed by the Court during the hearing, and Petitioner indicated that he understood that he was waiving the right to challenge the Government's seizure of evidence. Additionally, Petitioner indicated that he was satisfied with his attorney's performance and that he understood that he was giving up the right to collaterally attack his conviction and sentence.

As a narrow exception to the general rule that waivers of the right to collateral attack are enforceable, courts have held that such waivers do not foreclose the right to argue ineffective assistance of counsel with respect to the voluntariness of a plea agreement. See Jones v. United States, 167 F.3d 1142, 1145 (7th Cir. 1998); DeRoo v. United States, 223 F.3d 919, 924 (8th Cir. 2000) (holding that waiver does not foreclose the right to argue that the decision to enter into the plea was not voluntary due to ineffective assistance of counsel); U.S. v. Robinson, 2004 WL 1169112, at *3 (E.D. Pa. Apr. 30, 2004). Because Petitioner alleges that ineffective assistance of counsel resulted in an involuntary guilty plea, the Court must review this claim on the merits.

**B.     Ineffective Assistance of Counsel**

A defendant claiming ineffective assistance of counsel must demonstrate (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance resulted in prejudice. Strickland v. Washington, 466 U.S. 668, 688-92 (1984). "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." Id. at 693. In evaluating counsel's performance, the Court should be "highly deferential" and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689 (citation omitted).

In Hill v. Lockhart, 474 U.S. 52, 58 (1985), the Supreme Court held that the Strickland test applies to challenges to guilty pleas based on ineffective assistance of counsel. "Applying Strickland to a guilty plea challenge, the Hill Court held that the first part of the test remained unchanged and that the defendant must show that counsel's representation fell below an objective

6

standard of reasonableness. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." United States v. Anderson, 96 Fed. Appx. 81, 83-84 (3d Cir. 2004), citing McMann v. Richardson, 397 U.S. 759, 771 (1970). The second prong of the Strickland test requires the defendant to show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. Since the reasonableness of counsel's conduct is inextricably intertwined with the viability of Petitioner's claim regarding suppression, the Court will address the merits of the claim under the first prong of the Strickland test. See United States v. Jackson, 2007 WL 1690963, at *8 (N.D. Okla. June 11, 2007).

A review of the relevant case law reveals that Petitioner would not be entitled to the remedy of suppression. Postal inspectors are federal law enforcement officers authorized to investigate criminal matters related to the Postal Service and the mails. See 18 U.S.C. § 3061. Pursuant to this authority, postal inspectors are authorized to serve warrants and subpoenas, make arrests, carry firearms, and seize property. Id. While the authority of the USPIS is statutorily limited to "the enforcement of laws regarding property in the custody of the Postal Service, property of the Postal Service, the use of the mails, and other postal offenses" 18 U.S.C. § 3061(b)(1), the Supreme Court has articulated a "good faith" exception to the exclusionary rule governing Fourth Amendment violations. United States v. Leon, 468 U.S. 897 (1984). "Under Leon, suppression of evidence is inappropriate when an officer executes a search in objectively reasonable reliance on a warrant's authority." U.S. v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents ($92,422.57), 307 F.3d 137, 145 (3d Cir. 2002).

"The existence of a warrant typically justifies use of the exception, but an [agent] may not reasonably rely on a warrant: (1) when the magistrate judge issued the warrant in reliance on a deliberately or recklessly false affidavit; (2) when the magistrate judge abandoned his judicial role and failed to perform his neutral and detached function; (3) when the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) when the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized." United States v. Smith, 219 Fed. Appx. 242, 244-245 (3d Cir. 2007); see also United States v. Hodge, 246 F.3d 301, 308 (3d Cir. 2001).

In United States v. Clive, 2006 WL 1207954, at *1 (W.D. Pa. May 2, 2006), a factually analogous case, the defendant moved to suppress evidence seized by the USPIS. The Postal Inspector who led the investigation obtained a warrant to search and seize pornographic images from the defendant's computer after he had conversed via email and chat room with the undercover agent posing as a 15-year old female. As in the case at bar, the conduct that led to the issuance of the warrant involved electronic communications, not the use of the mails. The district court denied the motion to suppress, finding that "if the [Postal Iinspector's] affidavit did not state probable cause, it was certainly close enough to make the Magistrate Judge's probable cause determination reasonable, and therefore to make the [Postal Inspector's] reliance on the warrant objectively reasonable and in good faith, and admissible under Leon." Id.; see also United States v. Motto, 2002 WL 1018575, at *3 (E.D. Pa. May 17, 2002).

Petitioner argues that since the Postal Inspector had no evidence that the mail or postal property was involved, he lacked probable cause to obtain the warrant. The Court disagrees. It is

8

undisputed that the USPIS is instrumental in investigating offenses involving child pornography and exploitation. See, e.g. United States v. Zimmerman, 277 F.3d 426, 440 (3d Cir. 2002); United States v. Ruddell, 71 F.3d 331, 334 (9th Cir. 1995). In addition, numerous courts have recognized the strong link between pedophilic behavior and possession of child pornography. See, e.g., United States v. Byrd, 31 F.3d 1329, 1339 (5th Cir. 1994) ("common sense would indicate that a person who is sexually interested in children is likely to also be inclined, i.e., predisposed, to order and receive child pornography"); U.S. v. Brand, 467 F.3d 179, 197 (2d Cir. 2006) ("a direct connection exists between child pornography and pedophilia."); United States v. Long, 1994 WL 669538, at *11 (6th Cir. 1994); United States v. Winningham, 953 F.Supp. 1068, 1080 (D. Minn. 1996). In the case at bar, the warrant application was supported by a detailed affidavit from Inspector Fringo, who disclosed that he is a Postal Inspector and described his investigation. See Application and Affidavit for Search Warrant, at ¶5. The Magistrate Judge who reviewed the application was persuaded that probable cause existed to support the issuance of a warrant. In light of the findings yielded by Officer Fringo's investigation of Petitioner's illicit contacts with a minor, it was not unreasonable to conclude that Petitioner likely possessed child pornography that had been delivered by mail.

Finally, even were the Court to conclude that the Postal Inspector technically exceeded his statutory authority in seeking the search warrant, suppression would not be an appropriate remedy. See United States v. Jones, 13 F.3d 100, 103 (4th Cir. 1993) ("we do not think in any event that the appropriate remedy for an unauthorized investigation [by the Postal Inspector] in this case would be suppression of the evidence obtained or reversal of the conviction"); United States v. Lustig, 865 F.2d 41, 43 (2d Cir. 1989) (holding that even if the court were to conclude

9

that postal service exceeded its authority, "exclusion of evidence might be appropriate only in the event of widespread or repeated violations."); United States v. Sanders, 104 Fed. Appx. 916, 923 (4th Cir. 2004) ("The invocation of supervisory power to exclude evidence from a criminal trial in order to remedy a government agent's violation of statutory authority in a criminal investigation is an extreme measure that must be reserved for cases involving severe official misconduct. This is not such a case."). In the absence of evidence of severe misconduct or bad faith on the part of the Postal Inspector, Petitioner would not prevail on a motion to suppress.

During the April 14, 2007 evidentiary hearing, Petitioner's counsel testified that he researched the case law pertaining to the Postal Inspector's authority and concluded that there was no "clear-cut answer," but that suppression was unlikely:

> MR. GLEN: When [Murray] raised the issue, what did you do?
> MR. PETRONE: I did some research to find out whether there was any clear-cut answer as to whether the postal service had authority or did not have the authority. I believe what I told Mr. Murray was, after researching the issue, I did not find any – any authority that stated that the postal service did not have the authority to investigate this crime [...] And I think later on, there was the discussion that even if there was some kind of breach of their statutory authority, that if it did not rise to the level of a constitutional deprivation, it would ... it would be meaningless for him to try to challenge the search of his home on that basis alone.
> [...]
> MR. GLEN: Was there a decision at some point not to pursue that issue?
> MR. PETRONE: Correct.
> MR. GLEN: Whose decision was that?
> MR. PETRONE: Mr. Murray.

See April 11, 2007 Hearing Tr., at 31-33. Mr. Petrone further testified that he believed that mounting a challenge to the Postal Inspector's search and seizure would potentially jeopardize Petitioner's eligibility for a reduced sentence based on acceptance of responsibility. See April 11, 2007 Hearing Tr., at 32-33.

Counsel is not required to pursue meritless claims, and therefore his alleged failure to

fully advise Petitioner about the limits of the Postal Inspector's authority, even if true, did not fall below an objective standard of reasonableness. See United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument."). Moreover, since Petitioner would not be entitled to a remedy of suppression, he cannot demonstrate that he suffered prejudice by entering a guilty plea, including a waiver of his right to collaterally attack his sentence, upon his attorney's advice. See Jackson, 2007 WL 1690963, at *10. As Petitioner has failed to satisfy either prong of the Strickland test, his ineffective assistance of counsel claim is without merit and will be denied.

## IV.     Conclusion

Petitioner has failed to show that he suffered ineffective assistance of counsel. The Court will therefore enforce the plea agreement, including the waiver of collateral attack, and dismiss the Petition. Because Petitioner has not made the requisite showing of the denial of a constitutional right, a certificate of appealability should not issue.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : CRIMINAL NO. 04-666 |
| | : |
| CHARLES F. MURRAY | : |

## ORDER

AND NOW, this 13th day of August, 2007, upon consideration of Petitioner Charles F. Murray's Motion to Vacate, Set Aside, or Correct Sentence (docket no. 27), and all responses thereto, and after an evidentiary hearing, it is **ORDERED** that:

(1) The Motion is **DENIED**.

(2) The Clerk of the Court shall mark the case **CLOSED**.

(3) Because there is no probable cause to issue a certificate of appealability, no certificate of appealability shall issue.

BY THE COURT:

_____
BRUCE W. KAUFFMAN, J.